SNEED, J.,
delivered tbe opinion of tbe court:
In this action of ejectment, tbe plaintiffs claim under a sheriff’s deed founded upon a sale under an execution issued from this court. At tbe September term, 1872, of this court, a decree was rendered against tbe defendant, Prater, in favor of one Kobinson. On tbe 21st of November, 1872, two executions were issued against said Prater, under said decree, one for tbe amount of tbe decree and the other for tbe costs of tbe cause. They are, under tbe statute, returnable on tbe second Monday in March, 1873. This court held, at that time, an annual session in tbe city of Knoxville, beginning on tbe second Monday in September. Tbe statute provides that “all executions issuing from the supreme court shall be returnable within six'months from-tbe commencement of tbe term, if issued within six months, and to tbe first day of tbe next term, if issued more than six months after tbe commencement of tbe previous term.” Code, sec. 3021. Tbe executions in this case came into tbe bands of tbe sheriff of Blount county, and on tbe 21st of December, 1872, were levied on tbe lands in controversy. Tbe executions were returned into tbe office of tbe clerk *115 of this court by order of tbe plaintiff, on the 4th of March., 1873, -without a sale, and thereupon the clerk of this court re-issued to the sheriff' an order for the sale of said land, which was accordingly sold on the 28th of April, 1878, and due return thereof made to the ensuing team of the court. The plaintiff, Brickell, became the purchaser of the land, at $4,575.10, and afterwards sold and conveyed the land to his co-plaintiff, McDonough, at the price of $4,719.35.
The court charged the jury that if they found that the orders of sale, under which the land in controversy was sold by the sheriff to Brickell, were issued by the clerk of the supreme court without any authority of that court — that is, if the executions were levied on real estate, and returned to court without a sale having been made, and that the clerk issued the orders of sale under which the sheriff sold this land without first getting an order from the court ordering him to do so, his act would be extrajudicial, and the orders of sale would confer no authority on the sheriff to make the sale, and the sale made by him under such orders of sale, would be void.” Under this charge there was judgment and verdict for defendant.
We think the charge was erroneous. ■ There are conditions under which an execution loses its vitality, as the intervention of a term, or other circumstances by. which it has perforrned .its office, and has to be vitalized by some .supplemental or auxiliary proceeding, but this is not one of them. The plaintiff in such a case as this has a right, as a strict matter of law, to control his own execution, and have his right to a sale enforced with or without any formal-direction from the clerk. The execution was still alive. It had lost none of its vigor by the simple act of a return thereof into the hands of the clerk. The statute [Shannon’s Code, sec. 4749] requiring its return into the hands of the clerk within six months, is to secure promptness and expedition on the part of the sheriff in the performance of his official duty, and in no degree to paralyze the vigor and *116 effectivenes of tbe process itself. Tbe execution was still .under the control of tbe plaintiff himself, who bad a right to enforce it by a simple direction to the sheriff, whose duty it would be to make return thereof to the next ensuing-term of the court. If it appeared by such return that there was mo sale for want of bidders, then there might be some plausibilty in assuming that the execution was functus offi-cio, and that a judicial order was necessary to give-it life. It has been the immemorial practice of the clerk of this court, in such a case, on the application of the plaintiff, to issue a direction to the sheriff to sell the land. We see no objection to this practice, and if, as a matter of strict law, it might be regarded as supererogatory, yet, as a custom so long sanctioned by the court sometimes acquires the sanctity of law, and we are not inclined to make a new departure which might, upon a technicality, unsettle half the land titles of the country.
The action in this case was brought to recover 320 acres of land. In making up the issue, the defendant disclaimed all title and possession as to 220 acres of the land, and only claimed about 100 acres of tbe land described in 'the declaration, as to which he pleaded the general issue, not guilty.
Thereupon, the plaintiff demanded a writ of possession for the 220 acres comprised in defendant’s disclaimer, which the court refused. This action, of the court is assigned as error, and the plaintiffs insist 'upon their right to a writ of possession ti> the 220 acres. This is not allowable. The land thus covered by the disclaimer, was by the disclaimer itself, withdrawn from the controversy, until the plaintiff, by proof, had shown the disclaimer false. The court had no jurisdiction of it, in the absence of such proof. Where the title or right of possession was, -the court could not know, and in this action under the disclaimer, and without any proof, neither could be adjudicated. For the error indicated in the charge, let the judgment be reversed, and a new trial awarded.